Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, November 08, 2007 9:56:52 AM

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                              )
                                    )
PAUL EDWARD NESTOR,                 )    CASE NO. 05-6772
                                    )
            Debtor.                 )    CHAPTER 7

## MEMORANDUM OPINION

Paul Edward Nestor (the "Debtor") seeks to avoid the judicial lien recorded by the State of West Virginia ex rel. Darrell V. McGraw, Jr. ("West Virginia") pursuant to § 522(f) of the Bankruptcy Code. A telephonic hearing was held in this matter on January 3, 2007, and the parties were given an opportunity to submit written supplements to the existing pleadings. All submissions have been received, and the issue is ripe for decision. For the reasons set forth herein, the court will grant the Debtor's Motion to Avoid Judicial Lien of West Virginia.

### I.  BACKGROUND

On October 13, 2005, the Circuit Court of Marion County entered a judgment against the Debtor in the amount of $13,125 for civil penalties relating to violations of the West Virginia Consumer Credit and Protection Act in the case styled *State ex rel. Darrell V. McGraw, Jr. v. Tasks General Contracting and Paul Nestor*, Civil Action No. 05-C-81. The parties agree that the debt owed on the judgment is excepted from discharge pursuant to § 523(a)(7). On December 2, 2005, West Virginia recorded the judgment in Judgment Book No. 28, Page 969 of the real property records of Marion County.[1]

---

[1] The judgment was recorded after the Debtor filed his Chapter 13 bankruptcy without prior permission of the court. Even if the recordation violated the automatic stay, West Virginia would still have a judgment lien because W. Va. Code § 38-3-6 states that a judgment constitutes a lien regardless of whether or not the judgment has been recorded. *Robinson v. Robinson (In re*

As of November 30, 2005, when the Debtor filed his Chapter 13 bankruptcy, the Debtor owned real property. Before the Debtor's Chapter 13 plan was confirmed, his bankruptcy was dismissed on March 14, 2006, due to his failure to maintain his Chapter 13 plan payments. On March 30, 2006, a deed was recorded in Marion County transferring the Debtor's interest in the real property to Fairmont Federal Credit Union for the sum of $39,750, which was the highest bid at the foreclosure sale. On April 19, 2006, the Debtor's bankruptcy was re-opened for the purpose of converting the Chapter 13 case to one under Chapter 7. On May 2, 2006, the court entered an order granting the Debtor's motion to convert the case to Chapter 7. Subsequent to the conversion, the Debtor filed the present motion, and West Virginia objected on the grounds that, at the time of conversion, the Debtor had no interest in real property.

## II. DISCUSSION

The Debtor seeks an order avoiding West Virginia's judicial lien and preventing that lien from attaching to property acquired after the close of the bankruptcy case. West Virginia, however, asserts that the Debtor cannot avoid its judicial lien pursuant to § 522(f) because as of the date the Debtor converted his Chapter 13 case to Chapter 7 and filed his motion, he did not own any real property.

Section 522(f) provides in pertinent part:

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section.

11 U.S.C. § 522(f)(1).

In order to avoid a lien three conditions must be met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien. *Culver v. Chiu (In re Chiu)*, 304 F.3d 905, 908 (9th Cir. 2002).

In this case, West Virginia does not dispute that it holds a judicial lien. Rather, West Virginia argues that the Debtor cannot avoid a lien that does not exist and the Debtor is not entitled to exempt

_____

*Robinson)*, No. 05-137, 2007 Bankr. LEXIS 473 at *19 - 21 (Bankr. N.D.W. Va. February 5, 2007).

2

property in which he has no interest. The court, therefore, must resolve the appropriate point in time for determining the Debtor's interest in property, exemption, and valuation for purposes of § 522(f).

A prerequisite to the avoidance of a lien is that the debtor have an interest in property to which the lien attaches. The Supreme Court stated:

> The statute does not say that the debtor may undo a lien on an interest in property. Rather, the statute expressly states that the debtor may avoid 'the fixing' of the lien on the debtor's interest in property. The gerund 'fixing' refers to a temporal event. That event – the fastening of a liability – presupposes an object onto which the liability can fasten. The statute defines this pre-existing object as 'an interest of the debtor in property.' Therefore, unless the debtor had the property interest to which the lien attached at some time before the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of 522(f)(1)."

*Farrey v. Sanderfoot*, 500 U.S. 291, 296 (1991).

West Virginia has not disputed that the Debtor owned real property at the time that West Virginia was awarded a judgment against him. Under West Virginia Code § 38-3-6, West Virginia's judgment constitutes a lien on any real property owned by the Debtor without any further action by West Virginia. Therefore, West Virginia's lien attached to the Debtor's real property at the time that the judgment was rendered.[2]

West Virginia, however, asserts that the Debtor's transfer of the real property prior to the filing of his motion to avoid the judicial lien defeats the motion. The language of § 522(a)(2), however, defines value as the "fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." Therefore, under § 522(a), the value of the property for purposes of § 522(f) is determined as of the date of the filing of the petition. "[T]he Debtor need not have an interest in the property at the time it moves to avoid . . . ." *Chiu*, 304 F.3d at 908.

---

[2] The court recognizes that West Virginia Code § 38-3-6 sets forth a statutory scheme explaining the exact point in time that a judicial lien attaches to real property for purposes of determining priority, but it is not necessary for the court to complete an analysis under this provision to resolve the present matter.

" '[S]ection 522(f) operates retrospectively to annul the event of fastening the subject lien upon a property interest. Accordingly, the fundamental question of ownership is whether the property encumbered by the subject lien was 'property of the debtor' at the time of the fixing of that lien upon such property.' " *Id.* (citing *In re Vincent*, 260 B.R. 617, 620-21 (Bankr. D. Conn. 2000) (internal citation omitted)). As set forth by the Ninth Circuit, the Debtor is not required to have an interest in the subject real property at the time that the motion to avoid the judicial lien is filed. Rather, the petition date is the relevant date for § 522(f) determinations, and the subsequent transfer of the real property does not impact these determinations. See *Wilding v. Citifinancial Consumer Financial Services, Inc. (In re Wilding)*, 475 F.3d 428, 433 (1st Cir. 2007) (holding that the petition date is the relevant date for § 522(f) calculations when the debtor is seeking to reopen his bankruptcy to avoid a judicial lien that has been satisfied); *Chiu*, 304 F.3d at 908 (denying creditor's argument that the debtors' post-petition sale of the real property foreclosed their ability to avoid the judicial lien under § 522(f)); *In re Blue*, No. 04-03781-PCW7, 2006 Bankr. LEXIS 2937, at *7 (Bankr. E.D. Wash. October 20, 2006) (same); *In re Bowes*, No. 04-81207 C-7D, 2005 Bankr. LEXIS 1089, at *5 (Bankr. M.D.N.C. February 11, 2005) (granting debtors' motion to avoid judicial lien after the debtors' transferred part of the real property and then reopened their bankruptcy to avoid the lien).

West Virginia, however, argues that the date of the conversion of the Debtor's bankruptcy from one under Chapter 13 to one under Chapter 7 is the appropriate time for determining the Debtor's interest in the property, as well as, his right to an exemption in the property in regard to § 522(f). Section 348(a) provides:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C. § 348(a).

Section 348(a) clearly provides that the conversion of a bankruptcy case from one under Chapter 13 to one under Chapter 7 does not impact the date of the filing of the petition for § 522(f) calculations. See *In re Ahokas*, 362 B.R. 54, 66 (Bankr. D. Vt. 2007) (finding, without regard to the debtor's

conversion from Chapter 7 to Chapter 13, that the judicial lien impaired her exemption because the sum of the judicial lien and all other liens on the property together with the amount of the debtor's exemption exceeded the value of the debtor's interest in the property absent any liens as of the petition date).

West Virginia additionally asserts that the Debtor cannot avoid the judicial lien because he is not entitled to any exemption in property that he did not own as of the date of conversion. The Debtor's right to exempt his interests in property, however, is determined as of the petition date and not the date of conversion. *Alexander v. Jensen-Carter (In re Alexander)*, 236 F.3d 431, 433 (8th Cir. 2001) (finding that the debtor was not entitled to a homestead exemption in property in which he lived on the date he converted his Chapter 13 case to one under Chapter 7 because he had not lived in the property on the date that his petition was filed); *In re Marcus*, 1 F.3d 1050, 1051 (10th Cir. 1993) (same); *Lowe v. Sandoval (In re Sandoval)*, 103 F.3d 20, 23 (5th Cir. 1997) (finding that the bankruptcy court erroneously determined the debtors' right to an exemption as of the date of conversion as opposed to the petition date where the debtors surrendered the home they had resided in as of the petition date, converted their case to Chapter 7, and moved to what was a previous rental property); *Stinson v. Williamson (In re Williamson)*, 804 F.2d 1355, 1362 (5th Cir. 1986) (finding that a debtor who converted his case from Chapter 11 to Chapter 7 is entitled to amend his exemptions and the eligibility for the amended exemption is determined as of the original Chapter 11 filing date and not the date of conversion); *Harris v. Herman (In re Herman)*, 120 B.R. 127, 130 (9th Cir. B.A.P. 1990) ("The petition date is appropriate because the existence of exemptions presupposes a hypothetical attempt by the trustee to levy upon and sell all of the debtor's property upon the filing of the petition. Thus, any post-petition disposition of the property or post-petition change in the identity of the property has no impact upon the exemption analysis." (internal citations omitted)); *In re Lane*, No. 06-32879-elp7, 2007 Bankr. LEXIS 751, at *19 (Bankr. D. Or. March 14, 2007) (finding that post-petition changes in the character of exempt property have no effect on the validity of the exemption because the right to exempt an interest in property is determined as of the petition date).

Finally, the court must determine whether the dischargeability of the debt owed to West Virginia impacts the determination on the Debtor's motion to avoid the judicial lien. The parties have agreed that

5

the debt owed to West Virginia is excepted from discharge pursuant to § 523(a)(7).  The Debtor argues that even if his motion to avoid the judicial lien is denied, West Virginia is prohibited from collecting the judgment from any property of the Debtor, which was exempted in his bankruptcy.  The Debtor relies on § 522(c) in support of his argument, which West Virginia argues is irrelevant because the Debtor has no interest in property to exempt.

Section 522(f)(1)(A) provides for the avoidance of "[a] judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)."  The parties have agreed that the debt is excepted from discharge pursuant to § 523(a)(7) as a "[f]ine, penalty, or forfeiture payable to and for the benefit of a governmental unit . . . ."  Because the debt is not a domestic support obligation, its exception from discharge has no bearing on the avoidance of the judicial lien.  See *Rupp v. Elmasri ( In re Elmasri)*, No. 805-88238-619, 2007 Bankr. LEXIS 178, at *12 (Bankr. E.D.N.Y. May 24, 2007) ("In the case at bar, there has been no order entered voiding any judgment lien by either Ms. Rupp or Ms. England under Section 522(f).  Nor does this Court believe that any such order would be appropriate given that Section 522(f)(1)(A) prohibits the avoiding of a judicial lien 'that secures a debt - - to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determined in accordance with State or territorial law by a governmental unit, or property settlement . . . .' ")

In the case at hand, the Debtor owned the real property prior to the issuance of the judgment against him, and the lien attached to the real property.  W. Va. Code § 38-3-6.  Therefore, at the time that the Debtor filed his Chapter 13 bankruptcy petition, West Virginia held a valid judgment lien against the Debtor's real property.  Between the time that the Debtor's Chapter 13 bankruptcy was dismissed and subsequently reopened for the limited purpose of converting it to one under Chapter 7, the Debtor's real property was sold at foreclosure.  The amount paid at foreclosure was only sufficient to satisfy the first deed of trust.  Therefore, at the time that his bankruptcy was reopened and converted to Chapter 7, he had no interest in real property, and West Virginia was an unsecured creditor.

The Debtor asserted on Schedule A that his real property was valued at $60,000 as of the petition date.  West Virginia has not disputed this valuation, and, in fact, asserts that the appropriate valuation of

6

the real property is $39,750, the purchase price at the foreclosure sale.[3]  As of the petition date, the first deed of trust was scheduled as having a balance of $39,800, and the Debtor would have been entitled to a $25,000 exemption in the real property under W. Va. Code § 38-10-4(a).  In addition to West Virginia's lien in the amount of $13,125, the real property, as of the date of the filing of the petition, was also subject to additional judicial and statutory liens totaling $14,586.04.[4]  Because the extent of the impairment is $52,711, which is greater than the lien sought to be avoided, the judicial lien held by West Virginia may be entirely avoided.  11 U.S.C. § 522(f)(2).

### III.  CONCLUSION

Because the Debtor's exemption in real property that he owned as of the petition date was impaired by West Virginia's judicial lien, the Debtor is entitled to an order avoiding West Virginia's judicial lien.

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.

---

[3] Because the Debtor asserts a higher value than the Creditor and it more closely relates to the petition date, the court will use the Debtor's value in its calculations.

[4] Because the Debtor's exemption is impaired by West Virginia's judicial lien absent any consideration of the additional judicial and statutory liens, the court will not address any considerations under § 522(f)(2)(B).